**FILED**

**NOVEMBER 20, 2007**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**07 C 6572**

| | |
|---|---|
| LABORERS' PENSION FUND and LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, and JAMES S. JORGENSEN, Administrator of the Funds, | ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) |
| v. | ) ) |
| SEAMUS MCDONAGH CONSTRUCTION, LLC, an Illinois corporation, | ) ) ) ) |
| Defendant. | ) |

Case No.:

**JUDGE DER-YEGHIAYAN
MAGISTRATE JUDGE ASHMAN**

## COMPLAINT

Plaintiffs, Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (collectively "Funds") and James S. Jorgensen (hereinafter "Jorgensen"), Administrator of the Funds, by their attorneys Patrick T. Wallace, Jerrod Olszewski, Christina Krivanek, Amy N. Carollo, and Charles Ingrassia, and for their Complaint against Defendant Seamus McDonagh Construction, LLC, state:

## COUNT I

### (Failure To Pay Benefit Contributions)

1.      Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and (2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), and 28 U.S.C. §1331.

2.      Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

3.      The Funds are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA. 29 U.S.C. §1002(3) and 37(A). They are established and maintained pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA. 29 U.S.C. § 186(c)(5). The Funds have offices and conduct business within this District.

4.      Plaintiff James S. Jorgensen ("Jorgensen") is the Administrator of the Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer contributions owed to the Funds and to the Construction and General District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union"). With respect to such matters, Jorgensen is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

5.      Defendant Seamus McDonagh Construction, LLC, (hereinafter the "Company") is an Illinois limited liability corporation. The Company does business within this District and is an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

6.      The Union is a labor organization within the meaning of 29 U.S.C. §185(a). The Union and the Company have been parties to successive collective bargaining agreements, the

most recent of which became effective June 1, 2006 ("Agreement"). (A copy of the "short form"

Agreement entered into between the Union and the Company which Agreement adopts and

incorporates a Master Agreement between the Union and various employer associations, and also

binds the Company to the Funds' respective Agreements and Declarations of Trust, is attached

hereto as Exhibit A.)

      7.     Coleman McDonagh, (hereinafter "McDonagh"), is and was at all times relevant

the Managing Manager and a shareholder of the Company.  The Company and the Funds have

been parties to successive the Laborers' Health and Welfare Fund Participation Agreement [for]

Non-Bargained Employees and the Laborers' Pension Fund Participation Agreement [for] Non-

Bargained Employees (collectively referred to hereinafter as "Individual Self-Contributor

Agreements") on behalf of McDonagh, the most recent of which became effective January 23,

2007.  True and accurate copies of the Individual Self-Contributor Agreements are attached

hereto as Exhibits B and C.

      8.     The Funds have been duly authorized by the Construction and General Laborers'

District Council of Chicago and Vicinity Training Fund (the "Training Fund"), the Midwest

Construction Industry Advancement Fund ("MCIAF"), the Chicagoland Construction Safety

Council (the "Safety Fund"), the Laborers' Employers' Cooperation and Education Trust

("LECET"), the Underground Contractors' Association ("UCA"), the CDCNI/CAWCC

Contractors' Industry Advancement Fund (the "Wall & Ceiling Fund"), the CISCO Uniform

Drug/Alcohol Abuse Program ("CISCO"), the Laborers' District Council Labor Management

Committee Cooperative ("LCDMC"), the CARCO Industry Advancement Fund ("CARCO"),

and the Illinois Small Pavers' Association ("ISPA") to act as an agent in the collection of

contributions due to those funds.

9.      The Agreement, the Individual Self-Contributor Agreements, and the Funds' respective Agreements and Declarations of Trust obligate the Company to make contributions on behalf of its employees covered by the Agreement and McDonagh for pension benefits, health and welfare benefits, and/or benefits for the training fund and to submit monthly remittance reports in which the Company, *inter alia*, identifies the employees covered under the Agreement and the amount of contributions to be remitted to the Funds on behalf of each covered employee and McDonagh. Pursuant to the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, contributions which are not submitted in a timely fashion are assessed up to 20 percent liquidated damages plus interest.

10.     The Agreement, the Individual Self-Contributor Agreements, and the Funds' respective Agreements and Declarations of Trust require the Company to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance.

11.     The Agreement requires the Company to obtain and maintain a surety bond to guaranty the payment of future wages, pension and welfare benefits.

12.     Notwithstanding the obligations imposed by the Agreement, the Individual Self-Contributor Agreements, and the Funds' respective Agreements and Declarations of Trust, the Company has:

(a)     failed to report and pay contributions owed to Plaintiff Laborers' Pension Fund from July 2007 forward, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries;

(b)    failed to report and pay all contributions owed to Plaintiff Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity from July 2007 forward, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(c)    failed to report and pay all contributions owed to Laborers' Training Fund from July 2007 forward, thereby depriving the Laborers' Training Fund of contributions, income and information needed to administer the Fund and jeopardizing the training fund benefits of the participants and beneficiaries;

(d)    failed to report and pay all contributions owed to one or more of the other affiliated funds identified above from July 2007 forward, thereby depriving said fund(s) of contributions, income and information needed to administer said fund(s) and jeopardizing the benefits of the participants and beneficiaries; and

(e)    failed to obtain and maintain a bond in accordance with the Collective Bargaining Agreement.

13.    The Company failed to timely submit individual self-contributor benefit contributions for the months of February and May 2007. As a result, the Company owes $590.40 in unpaid late fees to the Funds.

14.    The Company failed to fully pay individual self-contributor benefit contributions for the month of July 2007. As a result, the Company owes $206.68 in unpaid contributions to the Funds.

5

15.     The Company's failure to timely submit current reports and contributions and obtain and maintain a bond violates Section 515 of ERISA, 29 U.S.C. §1145, and Section 301 of the LMRA.  29 U.S.C. §185.

16.     Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, and the terms of the Agreement, the Individual Self-Contributor Agreements and the Funds' respective Trust Agreements, the Company is liable to the Funds for unpaid contributions, as well as interest and liquidated damages on the unpaid contributions, accumulated liquidated damages, reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendant Seamus McDonagh Construction, LLC.:

a.     directing the Company to submit all outstanding company and individual self-contributor reports and contributions, to submit accumulated liquidated damages, and to submit its books and records to an audit upon demand by Plaintiffs;

b.     entering judgment in sum certain against Defendant on the amounts due and owing pursuant to the outstanding company and individual self-contributor reports, contribution shortages, accumulated liquidated damages, audit if any, including interest, liquidated damages, audit costs, and attorneys' fees and costs;

c.     ordering the Defendants to obtain and maintain a surety bond; and

d.     awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT II

### (Failure To Submit Union Dues)

17.    Plaintiffs reallege paragraphs 1 through 11 of Count I.

18.    Pursuant to agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which have been or should have been deducted from the wages of covered employees.

19.    Notwithstanding the obligations imposed by the Agreement and the Individual Self-Contributor Agreements, the Company has failed to submit company union dues that were or should have been withheld from the wages of its employees performing covered work for the period of July 2007 forward, and has failed to submit individual self-contributor union dues that were or should have been withheld from the wages of McDonagh for the period of December 2006 forward, thereby depriving the Union of income and information necessary to determine dues submission compliance.

20.    Pursuant to the Agreement and the Individual Self-Contributor Agreements, the Company is liable to the Funds for the unpaid union dues, liquidated damages, and reasonable attorneys' fees and costs as the Union's collection agent and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendant Seamus McDonagh Construction, LLC., ordering the Company to submit current dues company and individual self-contributor reports and dues, submit its books and records to the Funds for an audit upon demand, ordering the Company to pay any union dues revealed as due

and owing on the delinquent reports and audit together with all attorneys' fees and costs, and any

other legal and equitable relief as the Court deems appropriate.

November 20, 2007

Laborers' Pension Fund, et al.

By: _Christina Krivanek_
Christina Krivanek

Patrick T. Wallace
Jerrod Olszewski
Christina Krivanek
Amy N. Carollo
Charles Ingrassia
Laborers' Pension and Welfare Funds
Sub Office, 53 W. Jackson Blvd., Suite 550
Chicago, IL  60604
(312) 692-1540



# CONSTRUCTION & GENERAL LABORERS'
## DISTRICT COUNCIL OF CHICAGO AND VICINITY
AFFILIATED WITH THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL-CIO
101 BURR RIDGE PARKWAY • SUITE 300 • BURR RIDGE, IL 60527 • PHONE: 630/655-8269 • FAX: 630/653-8853

## INDEPENDENT CONSTRUCTION INDUSTRY COLLECTIVE BARGAINING AGREEMENT

It is hereby stipulated and agreed by and between _Seamus Construction Co. LLC_ ("Employer") and the Construction and General Laborers' District Council of Chicago and Vicinity, Laborers' International Union of North America, AFL-CIO ("Union"), representing and encompassing its affiliated Local Unions, including Local Nos. 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 269, 288, 582, 681, 1001, 1006, 1035, 1092, together with their successors, that may come within the Union's jurisdiction ("Local Union"), and encompassing the geographic areas of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry and Boone counties, Illinois, that:

1. **Recognition.** The Employer, in response to the Union's request for recognition as the majority 9(a) representative of its Laborer employees, and the Union's offer to show evidence of its majority support, hereby recognizes the Union under Section 9(a) of the Act as the sole and exclusive collective bargaining representative for the employees now and hereinafter employed in the Laborers' bargaining unit with respect to wages, hours and other terms and conditions of employment without the need for a Board certified election. The Employer has not assigned its rights for purposes of collective bargaining with the Union to any person, entity or association, and hereby revokes its prior assignment of bargaining rights, if any. The Employer further voluntarily elects not to assign such bargaining rights to any person, entity or association during the term of this Agreement or any extension thereof, without written approval from the Union. The Employer shall abide by this Agreement, and extensions hereof, provided that it employs at least one Laborer per year.

2. **Labor Contract.** The Employer affirms and adopts the applicable Collective Bargaining Agreements, as designated by the Union, between the Union and the Builders Association of Chicago and Vicinity, the Illinois Road Builders' Association, the Underground Contractors Association, the Mason Contractors Association of Greater Chicago, the Concrete Contractors Association of Greater Chicago, G.C.I./I.C.A./W.C.C., the Chicago Demolition Contractors' Association, the Illinois Environmental Contractors Association, the Lake County Contractors Association, the Contractors Association of Will and Grundy Counties, the Fox Valley General Contractors Association, the Chicago Area Rail Contractors Association, the Chicago Scaffolding Association, and all other employer associations with whom the Union or its affiliated Local Unions has an agreement. If the applicable collective bargaining agreement(s) expire during the term of this Agreement, any limitation on the right to strike shall also expire until a new agreement has been established, which shall be incorporated retroactively herein. It is further agreed that where the Employer works within the geographic jurisdiction of the Union's affiliated Local Unions that have negotiated an association agreement effective within the Local Union's jurisdiction, then the Local Union agreement is herein specifically incorporated into this Agreement and shall supersede the area-wide standard association agreements within the locality for which it is negotiated in the case of any conflict between them. Notwithstanding the foregoing, this Agreement supersedes all contrary terms in either the Local Union or area-wide association agreements.

3. **Dues Checkoff.** The Employer shall deduct from the wages of employees uniform working dues in the amount of 1.5% of gross wages, or such other amount as directed by the Union, and shall remit monthly to the designated Union office the sums so deducted, together with an accurate list showing the employees from whom dues were deducted, the employees' individual hours, gross wages and deducted dues amounts for the monthly period, not later than the tenth (10th) day of the month following the month for which said deductions were made. It is the parties' intention that these deductions comply with the requirements of Section 302(c)(4) of the Labor Management Relations Act of 1947, as amended, and such deductions be made only pursuant to written assignments from each employee on whose account such deductions are made, which shall not be irrevocable for a period of more than one year or beyond the termination date of the labor agreement, whichever occurs sooner.

4. **Work Jurisdiction.** This Agreement covers all work within the Union's work jurisdiction as set forth in the Union's Statement of Jurisdiction, receipt of which is hereby acknowledged, and as amended by the Union from time to time. The Statement of Jurisdiction is incorporated by reference into this Agreement. The Employer shall assign all work described therein to its Union-represented Laborer employees and acknowledges the appropriateness of this assignment. Neither the Employer nor the work assignments as required under this Agreement shall be stipulated or otherwise subject to adjustment by any jurisdictional disputes board or mechanism except upon written notice by and direction of the Union. The Employer, whether acting as a contractor, general manager or developer, shall not contract or subcontract any work to be done at the site of construction, alteration, painting or repair of a building, structure or other work and coming within the above-described jurisdiction of the Union to any person, corporation or entity not signatory to and covered by a collective bargaining agreement with the Union. This obligation applies to all tiers of subcontractors performing work at the site of construction. When the Employer contracts out or sublets any of the work coming within the above-described jurisdiction of the Union, it shall assume the obligations of any such subcontractor for prompt payment of employees' wages and other benefits required under this Agreement, including reasonable attorneys' fees incurred in enforcing the provisions hereof.

5. **Fringe Benefits.** The Employer agrees to pay the amounts that it is bound to pay under said Collective Bargaining Agreements to the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund (including Laborers' Excess Benefit Fund), the Fox Valley Benefit Funds, the Construction and General Laborers' District Council of Chicago and Vicinity Apprentice and Training Trust Fund, the Chicago Area Laborers-Employers Cooperation Education Trust ("LECET"), and to all other designated Union-affiliated benefit and labor-management funds, and to become bound by and be considered a party to the Agreements and Declarations of Trust creating said Trust Funds as if it had signed the original copies of the Trust Instruments and amendments thereto. The Employer ratifies and confirms the appointment of the Employer Trustees who shall, together with their successor Trustees, carry out the terms and conditions of the Trust Instruments. The Employer further affirms that all prior contributions paid to the Welfare, Pension and Training Funds were made by duly authorized agents of the Employer at all proper rates, and evidence the Employer's intent to be bound by the Trust Agreements and Collective Bargaining Agreements in effect when the contributions were made, acknowledging the report form to be a sufficient instrument in writing to bind the Employer to the applicable agreements. Upon written notice to the Employer, the Union may increase the minimum surety bond to an amount not exceeding one hundred thousand dollars where necessary to assure Employer compliance with its obligations.

Where Laborers covered by this Agreement perform work outside the Chicago area, the Employer shall, if covered under a local L.I.U.N.A.-affiliated labor agreement in the area, contribute to the local fringe benefit funds in the amounts set forth in the local agreement. Otherwise, it shall remit all fringe benefit fund contributions in the amounts and to the funds as required under this Agreement.

6. **Wages and Industry Funds.** The Employer shall pay all the negotiated hourly wages, fringe benefit and industry fund contributions it is bound to pay under the applicable Collective Bargaining Agreements, including, where applicable, contributions to the Chicago-Area LECET and designated labor-management and industry advancement funds, except that no contributions shall be made to MCIAF unless consented to and upon written direction from the Union. All additional wage rates, dues checkoff, and fringe benefits that are negotiated to become effective after May 31, 2001 shall be incorporated into this Agreement. The Union expressly reserves its sole right to allocate and apportion such annual total economic increase.

7. **Contract Enforcement.** All grievances arising hereunder shall, at the Union's discretion, be submitted to the Chicago District Council Grievance Committee for final and binding disposition in lieu of another grievance committee. Should the Employer fail to comply within ten (10) days with any binding grievance award, whether by grievance committee or arbitration, it shall be liable for all costs and legal fees incurred by the Union to enforce the award. Notwithstanding anything to the contrary, nothing herein shall limit the Union's right to strike or withdraw its members because of non-payment or underpayment of wages and/or fringe benefit contributions, failure by the Employer to timely remit dues to the Union, subcontracting in violation hereof, or non-compliance with a binding grievance award. The Employer's violation of any provision of this paragraph will give the Union the right to take any other lawful and economic action, including but not limited to all remedies at law or equity. It is expressly understood and agreed that the Union's right to take economic action is in addition to, and not in lieu of, its rights under the grievance procedures. Where necessary to correct contract violations, or where no acceptable steward is currently employed, the Union may appoint and place a steward from outside the workforce at all job sites.

8. **Successors.** In the event of any change in the ownership, management or operation of the Employer's business or substantially all of its assets, by sale or otherwise, it is agreed that as a condition of such sale or transfer that the new owner or manager, whether corporate or individual, shall be fully bound by the terms and conditions of this Agreement. The Employer shall provide no less than ten (10) days prior written notice to the Union of the sale or transfer and shall be obligated for all expenses incurred by the Union to enforce the terms of this paragraph. The Union may strike to enforce the terms hereof.

9. **Termination.** This Agreement shall remain in full force and effect from June 1, 2001 (unless dated differently below) through May 31, 2006, and shall continue thereafter unless there has been given written notice, by certified mail by either party hereto, received no less than sixty (60) nor more than ninety (90) days prior to the expiration date, of the desire to modify or amend this Agreement through negotiations. In the absence of such notice the Employer and the Union agree to be bound by the new area-wide negotiated agreements with the various Associations incorporating them into this Agreement and extending this Agreement for the life of the newly negotiated agreements, and thereafter for the duration of successive agreements, unless and until timely notice of termination is given as provided above.

10. **Execution.** The Employer acknowledges and accepts that facsimile signatures on this contract as if they were the original signatures. The Employer further acknowledges receipt of a copy of the complete Joint Agreements.

Dated: _April 1_ 20_04_

ACCEPTED:

Laborers' Local Union No. _4_

By: _R.P. Connolly_

**CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY**

By: _Frank Riley_
Frank Riley, President & Secretary-Treas.

By: _James Connolly_
James P. Connolly, Business Manager

For Office Use Only: UCA#

_Seamus Construction Co. LLC_
(Employer)

FEIN No. _____

_Colene McDonagh_
(Print Name and Title)

_J. McDonagh_
(Signature)

_2219 W. Farragut_
(Address)

_Chicago, IL 60625_
(City, State and Zip Code)

_773-330-2473   773-409-5230_
(Telephone/Telefax)

FIELD DEPT. AUG 0 6 2004

EXHIBIT A



PENSION
AND
WELFARE
FUND

# HEALTH and WELFARE DEPARTMENT of the CONSTRUCTION and GENERAL LABORERS' DISTRICT COUNCIL of CHICAGO and VICINITY

**11465 CERMAK ROAD
WESTCHESTER, ILLINOIS 60154-5768**

TOLL FREE: (866) 906-02(
TELEPHONE: (708) 562-02(
WELFARE FAX NO.: (708) 562-07
e-mail: Claims@chilpwf.co
e-mail: Eligibility@chilpwf.co

OARD OF TRUSTEES

MINISTRATOR
MES S. JORGENSEN

CRETARY
AN ESCHE

OINTED BY LABOR
MES P. CONNOLLY
NDY DALTON
RTIN T. FLANAGAN
ERATO NAIMOLI
O FT. PAVLIS
ANK RILEY

EMPLOYERS
N ESCHE
ARLES J. GALLAGHER
HARD E. GRABOWSKI
D LORIG
JNIS P. MARTIN
J. SCULLY

## LABORERS' HEALTH AND WELFARE FUND PARTICIPATION AGREEMENT FOR NON-BARGAINED EMPLOYEES

THIS PARTICIPATION AGREEMENT is entered into by and between _____ Construction _____ (Insert the Employer's complete name) (hereinafter the "Employer") who acknowledges that it is a duly licensed corporation under the laws of the State of ___Illinois___, and the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (referred to herein as the "Laborers' Health and Welfare Fund or "Fund"), who intend to enter into a written agreement required by Section 302 (c) of the LABOR-MANAGEMENT RELATIONS ACT OF 1947, as amended, to permit the Fund to receive contributions on behalf of eligible employees of said Employer. This Participation Agreement shall be effective as of _____, as approved by the Board of Trustees of the Fund.

1. The Employer hereby agrees to contribute to the Fund for each eligible employee, as hereinafter defined, contributions in an amount equal to the amounts required of Employers pursuant to the Collective Bargaining Agreements currently in effect between the Builders' Association of Chicago, Underground Contractors Association, Mason Contractors' Association of Cook County, Illinois Road Builders' Association, Concrete Contractors' Association of Greater Chicago, Employing Plasterers' Association of Greater Chicago, and Lake County Contractors Association (hereinafter called the "Associations") and the Construction and General Laborers' District Council of Chicago and Vicinity (hereinafter called the "Union") as such amounts may be amended from time to time or as required by resolution of the Board of Trustees in the case of non-bargained employees.

EMPLOYER PARTICIPANTS –

Builders' Association, Employing Plasterers' Association, Underground Contractors' Association, Mason Contractors' Association, Concrete Contractors' Association, Wrecking Contractors, Concrete Products Employers, Lake County Illinois Road Builders Association, Bridge and Highway Structural Builders; i.e. all those who employ Laborers Eng and Construction Industry.

EXHIBIT
B

Eligible employees are defined as:

a) Bargaining Unit Employees. All bargaining-unit employees as defined in the Collective Bargaining Agreements, Plan, or Trust Agreement.

b) Employees Performing Bargaining Unit Work. Participating employees of the Employer, including corporate officers provided that the Employer, has entered into this Participation Agreement for non-bargained employees.

The undersigned Employer agrees that a stockholder/shareholder/owner who wishes to participate as an employee of the Employer, and is actively performing bargaining unit work, may participate in the Fund's plan of benefits, and the Employer will not be required to make contributions on behalf of any other non-bargained employees so long as contributions are limited to individuals regularly performing some bargaining unit work.

The Board of Trustees reserves the right to terminate this Agreement with thirty (30) days notice at any time. It is further understood that less than ten (10%) percent of the total participants of the Fund may be stockholders, officers or owners in a non-bargained employee category and that the Board of Trustees will terminate in its discretion some or all non-bargained employees in order to reduce the number of such participants to less than ten (10%) percent of the total number of participants in the Fund. The Trustees shall give no less than thirty (30) days notice of any such termination, which shall become effective upon expiration of any earned continuation coverage.

2.  The aforementioned contributions shall be made on each eligible employee, whether a bargaining-unit or non-bargained employee in accordance with the rules promulgated and adopted by the Board of Trustees and as may be amended from time to time, including rules covering late payments and providing for retention and production of records and for audits.

a)  Contributions shall be made on behalf of bargaining-unit employees based upon the terms of the Collective Bargaining Agreement and the rules adopted by the Trustees.

b)  Employer acknowledges that it has an affirmative responsibility to notify the Fund as to whether or not the non-bargained employee(s) covered by this Participation Agreement is an active participant in bargaining unit work and to notify the Fund at any time said employee is no longer an active participant in bargaining unit work.

c)  Contributions for non-bargained employees:

(i)  Eligible non-bargained employees shall be contributed for at the hourly rate of contributions as called for in the Collective Bargaining Agreement and amendments thereto or for an amount and for said hours as may be required within its discretion by the Board of Trustees determined from time to time for non-bargained employees by resolutions passed by the Board of Trustees for the proper operation of the Fund.

(ii) Contributions for non-bargained employees must be for a minimum of forty (40) hours per week and two thousand eighty (2080) hours per year so long as eligible employment continues. Records of hours worked must be maintained in accordance with the Fund's rules or the Employer will be subject to the presumptions concerning hours worked and liabilities.

(iii) An Employer may contribute for an eligible employee as a non-bargained employee in accordance with this Participation Agreement but at no time may contributions be for a lesser rate or for less hours that the required rate and hours as required by the Board of Trustees for non-bargained employees. Work performed for the Employer by a non-bargained employee must be meaningful and not simply for the purposes of obtaining coverage under this Plan.

(iv) Any non-bargained employee who becomes eligible must remain an eligible employee and contributions must continue for the duration of this Participation Agreement unless he/she becomes ineligible.

(v) Whether an employee is eligible shall be the sole determination of the Board of Trustees, and the Employer shall be required to submit report forms as required by the Board of Trustees, upon demand of the Board of Trustees, in order to determine employee eligibility.

3. The Employer's obligation to contribute will continue beyond the term of the Collective Bargaining Agreement only upon the written consent of the Board of Trustees.

4. The Employer adopts and agrees to be bound by all the terms and provisions of the Agreement and Declaration of Trust and Plan creating the Fund (hereinafter called the "Trust Agreement and/or Plan of Benefits") as fully as if the Employer were an original party thereto, receipt of a copy of which the Employer hereby acknowledges The Employer hereby designates as its representatives on the Board of Trustees of the Fund the Employer Trustees named in said Trust Agreement, together with their successors, selected in the manner provided therein. The Employer agrees to be bound by all actions taken by said Trustees pursuant to the powers granted them by the Trust Agreement.

5. Execution of this Participation Agreement by representatives of the Employer and the Board of Trustees hereby indicates acceptance of the employees listed herein by the Trustees for participation in the Fund and also indicates agreement by the Employer and the Board of Trustees to the terms and conditions recited above regarding the participation of the employees and the Employer in the Fund.

6. This Participation Agreement shall remain in full force and effect for the term of the current Collective Bargaining Agreement between the Association and the Union and shall be automatically renewed from time to time for terms coterminous with those of the aforementioned Collective Bargaining Agreement as the same may be renegotiated from time to time however, it is understood between the Fund and the Employer that the minimum

3

Wel NBPA

period of this Participation Agreement shall be three (3) years from the date of its executic which may be a greater period than the current Collective Bargaining Agreement.

7. Any Employer signing this Participation Agreement, who chooses to contribute for no bargained employees only to the Fund and not to the Laborers' Pension Fund, recognizes ar agrees that it must contribute for bargaining unit employees to both the Fund and th Laborers' Pension Fund.

8. If contributions owed by an Employer on bargaining unit employees are not timely made t the Fund, the Employer's non-bargained employees shall thereupon not be eligible for an benefits under the terms of the Participation Agreement, until the delinquency is fully cure (including payment of any damages, interest or collection costs) and any contributions mad on behalf of non-bargained employees shall first be applied to meet any obligation t contribute on bargaining unit employees, including any costs of collections, interest an liquidated damages incurred by the Fund.

9. Any non-bargained employee who fails to perform meaningful bargaining unit work sha become ineligible to have further contributions made on the employee's behalf to the Fun and to obtain payment of any otherwise eligible claims incurred after such loss of eligibility Any such non-bargained employee for whom contributions are made by an Employer shal not receive benefits and all contributions made on his behalf shall be forfeited. The Employe shall continue to be obligated to make contributions to the Fund for any remaining eligibl employees unless terminated by the Board of Trustees provided, however, that any violatio of this Participation Agreement will not affect the obligation of the Employer to pa contributions for bargaining unit employees, unless terminated by the Board of Trustees.

10. An Employer desiring to terminate this Participation Agreement must give sixty (60) days notice prior to the termination date of the existing Collective Bargaining Agreement betwee the Union and the Associations (or, if sooner, sixty (60) days before the third anniversary o this Participation Agreement) of the Employer's desire to terminate this Participatio Agreement. If the Employer fails to give timely notice to the Board of Trustees, th Employer shall be bound to the provisions of the Participation Agreement for the period o the next Collective Bargaining Agreement or the third anniversary of said Collective Bargaining Agreement if sooner, and thereafter during the terms of successor Collective Bargaining Agreements until proper notice is given.

4

IN WITNESS WHEREOF, the Employer and the Board of Trustees have caused this Participation Agreement to be executed on their behalf by duly authorized officers on the dates appearing opposite their signatures.

We declare the following employees to be non-bargained employees actively performing bargaining unit work

Name _Coleman McDonough_

Social Security Number _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_

Name _____

Social Security Number _____

(If additional lines are needed, please attach on a separate piece of paper.)

## DECLINATION STATEMENT

Execution of this Participation Agreement is a condition precedent for participation in non-bargained status but failure to execute will not effect the Employers' obligation to otherwise contribute for bargaining unit employees.

Employer: (Name of Company)

Name _Seamus Construction_

Address: _2219 W. Nugget_

_Chicago IL 60625_

By: _Owner_
    (Title)

Date: _1/29/07_

Board of Trustees of the Laborers' Health and Welfare Fund

By _____

By: _____

Date: _3/28/07_

5

Wel NBPA

80068

PENSION
AND
WELFARE
FUND

# LABORERS' PENSION FUND
## (CHICAGO and VICINITY)

**11465 CERMAK ROAD
WESTCHESTER, ILLINOIS 60154-5768**

**TOLL FREE: (866) 906-0200
TELEPHONE: (708) 562-0200
PENSION FAX NO.: (708) 562-0790
e-mail: Pension@chilpwf.com**

**BOARD OF TRUSTEES**

ADMINISTRATOR
JAMES S. JORGENSEN

SECRETARY
ALAN ESCHE

APPOINTED BY LABOR
JOSEPH COCONATO
JAMES P. CONNOLLY
J. MICHAEL LAZZARETTO
FRANK RILEY
LARRY WRIGHT
JEFF M. ZIEMANN

FOR EMPLOYERS
CHARLES COHEN
ALAN ESCHE
RICHARD E. GRABOWSKI
ROBERT G. KRUG
DAVID H. LORIG
GARY LUNDSBERG

## LABORERS' PENSION FUND
## PARTICIPATION AGREEMENT
## FOR NON-BARGAINED EMPLOYEES

THIS PARTICIPATION AGREEMENT is entered into by and between ~~Seanos Construction Co LLC~~

(Insert the Employer's complete name) (hereinafter the "Employer") who acknowledges that it is a duly licensed corporation under the laws of the State of ~~Illinois~~, and the Laborers' Pension Fund (referred to herein as the "Fund"), who intend to enter into a written agreement required by Section 302 (c) of the LABOR-MANAGEMENT RELATIONS ACT OF 1947, as amended, to permit the Fund to receive contributions on behalf of eligible employees of said Employer. This Participation Agreement shall be effective as of ~~Nov 33, 2007~~, as approved by the Board of Trustees of the Fund.

1. The Employer hereby agrees to contribute to the Fund for each eligible employee, as hereinafter defined, contributions in an amount equal to the amounts required of Employers pursuant to the Collective Bargaining Agreements currently in effect between the Builders' Association of Chicago, Underground Contractors Association, Mason Contractors' Association of Cook County, Illinois Road Builders' Association, Concrete Contractors' Association of Greater Chicago, Employing Plasterers' Association of Greater Chicago, and Lake County Contractors Association (hereinafter called the "Associations") and the Construction and General Laborers' District Council of Chicago and Vicinity (hereinafter called the "Union") as such amounts may be amended from time to time or as required by resolution of the Board of Trustees in the case of non-bargained employees.

Eligible employees are defined as:

a) <u>Bargaining Unit Employees.</u> All bargaining-unit employees as defined in the Collective Bargaining Agreements, Plan, or Trust Agreement.

EMPLOYER PARTICIPANTS –
Builders' Association, Employing Plasterers' Association, Underground Contractors' Association, Mason Contractors Association, Concrete Contractors' Association, Wrecking Contractors, Concrete Products Employers, Lake County Illinois Employers, Road Builders Association, Bridge and Highway Structural Builders; i.e. all those who employ Laborers Engaged in and Construction Industry.



EXHIBIT
C

b) Employees with a History of Performing Bargaining Unit Work and are Currently Performing Bargaining Unit Work. Participating employees of the Employer, including corporate officers provided that the Employer, has entered into this Participation Agreement for non-bargained employees, and the non-bargained employees have previously performed covered work within the industry and contributions were previously made on their behalf to the Fund.

The undersigned Employer agrees that a stockholder/shareholder/owner who wishes to participate as an employee of the Employer, and is actively performing bargaining unit work and has a history of performing bargaining unit work for which contributions were previously made to the Fund, may participate in the Fund's plan of benefits, and the Employer will not be required to make contributions on behalf of any other non-bargained employees so long as contributions are limited to individuals regularly performing some bargaining unit work and have a history of performing bargaining unit work for which contributions were made to the Fund.

The Board of Trustees reserves the right to terminate this Agreement with thirty (30) days notice at any time. It is further understood that less than ten (10%) percent of the total participants of the Fund may be stockholders, officers or owners in a non-bargained employee category and that the Board of Trustees will terminate in its discretion some or all non-bargained employees in order to reduce the number of such participants to less than ten (10%) percent of the total number of participants in the Fund. The Trustees shall give no less than thirty (30) days notice of any such termination, which shall become effective upon expiration of any earned continuation coverage.

2. The aforementioned contributions shall be made on each eligible employee, whether a bargaining-unit or non-bargained employee in accordance with the rules promulgated and adopted by the Board of Trustees and as may be amended from time to time, including rules covering late payments and providing for retention and production of records and for audits.

   a) Contributions shall be made on behalf of bargaining-unit employees based upon the terms of the Collective Bargaining Agreement and the rules adopted by the Trustees.

   b) Employer acknowledges that it has an affirmative responsibility to notify the Fund as to whether or not the non-bargained employee(s) covered by this Participation Agreement is an active participant in bargaining unit work and to notify the Fund at any time said employee is no longer an active participant in bargaining unit work.

   c) Contributions for non-bargained employees:

      (i) Eligible non-bargained employees shall be contributed for at the hourly rate of contributions as called for in the Collective Bargaining Agreement and amendments thereto or for an amount and for said hours as may be required within its discretion by the Board of Trustees determined from time to time for non-bargained employees by resolutions passed by the Board of Trustees for the proper operation of the Fund.

(ii)   Contributions for non-bargained employees must be for a minimum of forty   (40) hours per week and two thousand eighty (2080) hours per year so long as eligible employment continues. Records of hours worked must be maintained in accordance with the Fund's rules or the Employer will be subject to the presumptions concerning hours worked and liabilities.

(iii)  An Employer may contribute for an eligible employee as a non-bargained employee in accordance with this Participation Agreement but at no time may contributions be for a lesser rate or for less hours that the required rate and hours as required by the Board of Trustees for non-bargained employees. Work performed for the Employer by a non-bargained employee must be meaningful and not simply for the purposes of obtaining coverage under this Plan.

(iv)  Any non-bargained employee who becomes eligible must remain an eligible employee and contributions must continue for the duration of this Participation Agreement unless he/she becomes ineligible.

(v)   Whether an employee is eligible shall be the sole determination of the Board of Trustees, and the Employer shall be required to submit report forms as required by the Board of Trustees, upon demand of the Board of Trustees, in order to determine employee eligibility.

3.  The Employer's obligation to contribute will continue beyond the term of the Collective Bargaining Agreement only upon the written consent of the Board of Trustees.

4.  The Employer adopts and agrees to be bound by all the terms and provisions of the Agreement and Declaration of Trust and Plan creating the Fund (hereinafter called the "Trust Agreement and/or Plan of Benefits") as fully as if the Employer were an original party thereto, receipt of a copy of which the Employer hereby acknowledges.  The Employer hereby designates as its representatives on the Board of Trustees of the Fund the Employer Trustees named in said Trust Agreement, together with their successors, selected in the manner provided therein.  The Employer agrees to be bound by all actions taken by said Trustees pursuant to the powers granted them by the Trust Agreement.

5.  Execution of this Participation Agreement by representatives of the Employer and the Board of Trustees hereby indicates acceptance of the employees listed herein by the Trustees for participation in the Fund and also indicates agreement by the Employer and the Board of Trustees to the terms and conditions recited above regarding the participation of the employees and the Employer in the Fund.

6.  This Participation Agreement shall remain in full force and effect for the term of the current Collective Bargaining Agreement between the Association and the Union and shall be automatically renewed from time to time for terms coterminous with those of the aforementioned Collective Bargaining Agreement as the same may be renegotiated from time to time however, it is understood between the Fund and the Employer that the minimum

Pen NBPA

period of this Participation Agreement shall be three (3) years from the date of its execution which may be a greater period than the current Collective Bargaining Agreement.

7. Any Employer signing this Participation Agreement, who chooses to contribute for non-bargained employees only to the this Fund and not to the Health and Welfare Fund, recognizes and agrees that it must contribute for bargaining unit employees to both the Fund and the Laborers' Health and Welfare Fund.

8. If contributions owed by an Employer on bargaining unit employees are not timely made to the Fund, the Employer's non-bargained employees shall thereupon not be eligible for any benefits under the terms of the Participation Agreement, until the delinquency is fully cured (including payment of any damages, interest or collection costs) and any contributions made on behalf of non-bargained employees shall first be applied to meet any obligation to contribute on bargaining unit employees, including any costs of collections, interest and liquidated damages incurred by the Fund.

9. Any non-bargained employee who fails to perform meaningful bargaining unit work shall become ineligible to have further contributions made on the employee's behalf to the Fund and to obtain pension credit under the terms of the Plan. Any such non-bargained employee for whom contributions are made by an Employer shall not receive benefits and all contributions made on his behalf shall be forfeited. The Employer shall continue to be obligated to make contributions to the Fund for any remaining eligible employees unless terminated by the Board of Trustees provided, however, that any violation of this Participation Agreement will not affect the obligation of the Employer to pay contributions for bargaining unit employees, unless terminated by the Board of Trustees.

10. An Employer desiring to terminate this Participation Agreement must give sixty (60) days' notice prior to the termination date of the existing Collective Bargaining Agreement between the Union and the Associations (or, if sooner, sixty (60) days before the third anniversary of this Participation Agreement) of the Employer's desire to terminate this Participation Agreement. If the Employer fails to give timely notice to the Board of Trustees, the Employer shall be bound to the provisions of the Participation Agreement for the period of the next Collective Bargaining Agreement or the third anniversary of said Collective Bargaining Agreement if sooner, and thereafter during the terms of successor Collective Bargaining Agreements until proper notice is given.

4

Pen NBPA

IN WITNESS WHEREOF, the Employer and the Board of Trustees have caused this Participation Agreement to be executed on their behalf by duly authorized officers on the dates appearing opposite their signatures.

We declare the following employees to be non-bargained employees actively performing bargaining unit work and have a history of performing bargaining unit work for which contributions to the Fund were paid:

_Delores McDonagh_

**Name**

_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_

**Social Security Number**

**Name**

**Social Security Number**

(If additional lines are needed, please attach on a separate piece of paper.)

## DECLINATION STATEMENT

Execution of this Participation Agreement is a condition precedent for participation in non-bargained status but failure to execute will not effect the Employers' obligation to otherwise contribute for bargaining unit employees.

Employer: (Name of Company)

Name: _Seamus Construction_

Address: _2215 W. Fullerton_

_Chicago IL 60235_

By: _Owner_

         **(Title)**

Date: _1/23/07_

Board of Trustees of the
Laborers' Pension
Fund

By: _[signature]_

By: _____

Date: _3/28/07_

5